IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ST. MARYS AREA WATER AUTHORITY, :
       Plaintiff
                            :

       vs.               :   CIVIL NO. 1:CV-04-1593

ST. PAUL FIRE & MARINE     :
INSURANCE COMPANY,
       Defendant       :

*M E M O R A N D U M*

I.    *Introduction.*

      We are considering the motion of defendant, St. Paul Fire & Marine Insurance Co., for reconsideration of our order of October 27, 2006, granting summary judgment for plaintiff, St. Mary's Area Water Authority. The order imposed liability on the defendant insurance company for property losses the Authority sustained after chlorine gas escaped from a pinhole leak in a pigtail pipe at its water-treatment facility.

      The Authority had an all-risk policy with St. Paul and filed this suit for breach of contract, alleging that St. Paul was obligated to pay for the loss under the policy's coverage for mechanical breakdown. St. Paul resisted payment by denying that the loss came within its mechanical-breakdown coverage and by arguing that, in any event, certain exclusions precluded coverage.

On cross-motions for summary judgment on the issue of coverage alone,[1] we decided that the defendant insurance company was obligated to provide coverage. *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, ___ F. Supp. 2d ___, 2006 WL 3087704, 2006 U.S. Dist. LEXIS 78757 (M.D. Pa. 2006). On its motion for reconsideration, St. Paul contests both parts of our analysis leading to that ruling. In the first part, we decided that because of exclusions for wear and tear, defect and corrosion, coverage for mechanical breakdown would be illusory if we did not allow coverage in the circumstances here. In the second part, we decided there was an ambiguity favoring coverage when the pollution and contamination exclusions were considered together because the contamination exclusion did not bar coverage while the pollution exclusion did, the result of an anticoncurrent-cause clause in the pollution exclusion absent from the contamination exclusion.

II.  *Standard of Review*.

Because we ruled on liability alone without deciding damages, our order was interlocutory. We therefore have extremely broad discretion to consider the arguments raised in the reconsideration motion, for a court may revise an interlocutory order "when consonant with justice to do so." *See*

_____

[1] The parties subsequently informed the court that the damages are in the amount of $1,767,532.

*United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973);

*Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102, 103 (M.D.

Pa. 1989) (quoting *Jerry*); *Philadelphia Reserve Supply Co. v.

Nowalk & Assocs., Inc.*, 864 F. Supp. 1456, 1460-61 (E.D. Pa.

1994); *see also Jairett v. First Montauk Sec. Corp.*, 153 F.

Supp. 2d 562, 579-80 (E.D. Pa. 2001).[2]


III. *Discussion.*

    A. *Coverage For Mechanical Breakdown
       Is Not Illusory.*

    Our discussion will assume familiarity with our

summary-judgment memorandum. *St. Mary's Area Water Auth.*, *supra*,

___ F. Supp. 2d ___, 2006 WL 3087704, 2006 U.S. Dist. LEXIS

78757. We provide only enough information here to discuss the

arguments on reconsideration.

    Plaintiff's experts traced the leak in the pipe to a

defect either in the copper tubing of the pipe or in how a joint

was brazed. In our memorandum, relying on *401 Fourth Street,*

---

    [2] Using the standard under Fed. R. Civ. P. 59(e) for
seeking to alter or amend a final order, the defendant insurance
company argues that we made clear errors of law in issuing the
October 27 order. *See North River Ins. Co. v. Cigna Reinsurance
Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)(a challenge to a final
order requires in part a showing of new evidence that was not
previously available to the moving party or "clear error of
law"). We may or may not have committed clear error, but that is
not the standard we apply to a challenge to an interlocutory
order. *See M.K. v. Tenet*, 196 F. Supp. 2d 8, 12 (D.D.C. 2001)(an
interlocutory order is not subject to the same standard employed
for a challenge under Fed. R. Civ. P. 59(e) to a final order).

*Inc. v. Investors Ins. Group*, 583 Pa. 445, 460 n.3, 879 A.2d
166, 174 n.3 (2005), we decided that the Authority was entitled
to coverage under the mechanical breakdown endorsement because
that coverage would otherwise be illusory in light of the
exclusions for wear and tear, defect (either inherent or in the
manufacture or design of the pigtail pipe) and corrosion. We
accepted Plaintiff's argument that there was no reasonably
expected set of circumstances where the mechanical breakdown
coverage would apply if there was no corrosion or defect as
defect was defined in the policy's exclusions. *See* ___ F. Supp.
2d at ___, 2006 WL 3087704, at *13-15, 2006 U.S. Dist. LEXIS
78757, at *31-43.[3]

In doing so, we rejected the defendant insurer's
argument that coverage was not illusory, which argued the
following as specific examples of coverage for mechanical
breakdown when there was no defect or corrosion: a fire; an
explosion that damages a neighboring machine; an object being
introduced into a mechanical system, thereby causing it to fail;
or the misuse of a machine. We agreed with Plaintiff that all of
these events would have as their proximate cause perils already
covered under the policy and were examples of those covered
risks, not of coverage for mechanical breakdown. *Id.* at ___,

---

[3] We did decide that an exclusion for wear and tear alone
would not create illusory coverage since an all-risk policy is
supposed to cover only fortuitous events. *See* ___ F. Supp. 2d at
___ n. 6, 2006 WL 3087704, at *18 n.6, 2006 U.S. Dist. LEXIS
78757, at *41 n.6.

2006 WL 3087704, at *14, 2006 U.S. Dist. LEXIS 78757, at *40-43.[4] We did, however, state that if there was coverage for at least one risk, the mechanical breakdown endorsement would not be illusory. *Id.* at ___, 2006 WL 3087704, at *14, 2006 U.S. Dist. LEXIS 78757, at *39.

In its motion for reconsideration, Defendant argues we clearly erred in concluding that mechanical breakdown could not occur in the absence of a defect or corrosion. In support, it submits the affidavit of George Dickover, an adjuster for the Travelers Indemnity Company. For the first time in this litigation, the affidavit sets forth four examples of coverage under the mechanical breakdown endorsement which do not involve defect or corrosion.[5] Representing claims St. Paul actually paid in Pennsylvania from 2002 to 2004, the examples are:

> (1) a mechanical breakdown of a pump caused by sand ingestion due to a shallow well; (2) mechanical breakdown of a pump caused by an overheated bearing that caused a pump to seize; (3) mechanical breakdown of a steel shaft of a rotostrainer due to rocks and debris; and (4) mechanical breakdown of a diesel engine block caused by overheating.

(Doc. 101, Def.'s Br. in Supp. of Recons., p. 5, Ex. A, ¶¶ 5 and 6)(numbering added).

---

[4] In the course of our discussion, we mistakenly said that negligence was covered under the policy. *Id.* at ___, 2006 WL 3087704 at *14, 2006 U.S. Dist. LEXIS 78757 at *42.

[5] As stated in note 1 above, if we were reviewing a challenge to a final order, Defendant would have to have shown that this evidence was not previously available, but we have broad discretion when reviewing an interlocutory order.

In its brief, Defendant also argues eight hypothetical examples of coverage that would not involve defect or corrosion. The third and fourth examples are:

> 3. An electrical surge comes into a plant, causes a momentary interruption in current flow and results in physical damage to rotating machinery. This could take the form of gear damage or even a broken shaft. The surge could be due to switching transformers in a nearby electrical substation or opening and closing breakers to bring power in from a different source.

> 4. Surging in a centrifugal air conditioning system results in damage to the impeller and drive train. The surging could be due to operating under light load conditions, and has nothing to do with wear and tear.

(Doc. 101, Def.'s Br. in Supp. of Recons., p. 5)(numbering added).[6]

---

[6] The remaining examples are:

> 1. Something drops into rotating machinery and causes damage. The dropping of the part into the machine is not necessarily due to negligence. It may be impossible to trace the source of the part or to even identify what it is.

> 2. Something breaks off and falls into a machine. This is common in printing presses where a gripper bar bolt breaks and parts enter the press causing considerable damage.

> . . . .

> 5. A machine runs low on lube oil and the bearings seize. The low lube oil could occur for a variety of reasons, such as normal leakage.

> 6. A city water line supplying cooling water

As part of its opposition, the Authority first argues categorically that mechanical breakdown only occurs when problems internal to the machine or part cause it to cease operating. In support, it cites *Caldwell v. Transp. Ins. Co.*, 234 Va. 639, 364 S.E.2d 1 (1988), and *Hamilton v. Gen. Ins. Co. of Am.*, 71 Ark. App. 353, 32 S.W.3d 16 (2000). Plaintiff next argues that internal weaknesses and deficiencies are "intrinsic" to mechanical breakdown so that it reasonably expected that the mechanical breakdown endorsement would cover losses caused by defects, yet these very deficiencies were excluded from coverage by the exclusions for defects, thereby making the coverage illusory.

————————————

> to a machine breaks, resulting in no cooling water and resulting overheating of a machine. The overheating causes damage to bearing surfaces.
>
> 7. A machine is operated incorrectly, such as being overloaded, resulting in damage. A specific example could be a shear press where the operator tries to cut metal which is too thick for the machine.
>
> 8. Water induction in a steam system damages a steam turbine. Water induction is an event where water or even cool vapor enters a turbine during operation, resulting in rapid cooling of the turbine. This could result in rubbing of stationary and rotating parts, distortion or even total destruction of the turbine. The cause of the water induction is often difficult to trace, but could be due to operation upset in the boiler or a slowly reacting check valve in an extraction line.

(*Id.*, pp. 5-6)(numbering added).

These two opposition arguments lack merit. It is not necessarily true that mechanical breakdown only results from internal causes, and neither *Caldwell* nor *Hamilton* support this position. In *Caldwell*, the court did interpret an exclusion for mechanical breakdown as "restricted to losses arising from internal or inherent deficiency or defect, rather than from any external cause," 234 Va. at 644, 354 S.E.2d at 3, but did so in the context of the policy it was interpreting, a policy that provided insurance for "all risks . . . from any external cause . . . ." except as provided in the exclusions. *Id.* at 643, 354 S.E.2d at 3.

The insurance was for the plaintiff's well-drilling equipment. The equipment was damaged when the drill hit a change in the slope of the rock strata, breaking off a portion of the drill bar and the bit. The court interpreted the mechanical breakdown exclusion as applying only to internal defects because "most casualties to contractor's equipment could be expected to impair its function to some degree," *id.* at 644, 354 S.E.2d at 3, but to interpret the exclusion this broadly would bring within the exclusion external causes (the very risks to be insured against), thereby "render[ing] the insurance clause nearly meaningless and the insurance nearly worthless." *Id.*, 354 S.E.2d at 3. Here, in contrast, the insurance does not purport to provide coverage for "all risks" from any "external cause." *See Nat'l Union Fire Ins. Co. v. Travelers Indem. Co.*, 210 F.

Supp. 2d 479, 486-87 (S.D.N.Y. 2002)(rejecting defendant reinsurer's argument based on *Caldwell* that "breakdown" in a policy meant only internal causes and ruling that in the context of the policy at issue that "breakdown" meant "internal damage resulting from external causes").

In *Hamilton*, there was no dispute about the interpretation of the mechanical breakdown exclusion; the only issue presented was one of fact, whether the plaintiff insured had presented sufficient evidence that the damage to his airplane had been caused by the entrance of a foreign object into the engine. The court decided that he had not, thereby requiring judgment for the insurance company based on the exclusion for mechanical breakdown resulting from wear and tear. 71 Ark. App. at 355, 20, 32 S.W.3d at 17, 20.

Plaintiff's second argument, that it reasonably expected that the mechanical breakdown endorsement would cover losses caused by defects because defects are intrinsic to mechanical breakdown, lacks merit because the insured's reasonable expectations are a separate issue from illusory coverage. The latter issue basically deals with whether exclusions take away everything that an insuring provision gives. Additionally, on the issue of reasonable expectations itself, while Pennsylvania does focus on the reasonable expectations of the insured, "an insured may not complain that [its] reasonable expectations were frustrated by policy

limitations which are clear and unambiguous." *Donegal Mut. Ins.
Co. v. Baumhammers*, 893 A.2d 797, 819 (Pa. Super. 2006)(en
banc), *appeal granted*, 908 A.2d 265 (Pa. Aug. 29, 2006). Thus,
we have to take into account the exclusions when we consider
what the insured might have reasonably expected.

We turn now to the parties' arguments on Defendant's
specific examples. We deal first with examples of actual
payment, newly raised in the reconsideration motion: (1) a
mechanical breakdown of a pump caused by sand ingestion due to a
shallow well; (2) mechanical breakdown of a pump caused by an
overheated bearing that caused a pump to seize; (3) mechanical
breakdown of a steel shaft of a rotostrainer due to rocks and
debris; and (4) mechanical breakdown of a diesel engine block
caused by overheating.

All of these examples appear not to have been caused
by defect or corrosion and would therefore rebut Plaintiff's
claim of illusory coverage. But based on its position that
mechanical breakdown always involves only internal causes,
Plaintiff counters that the first and third examples are not
examples of mechanical breakdown because the losses were
proximately caused by external causes, sand ingestion, and rock
and debris. The Authority cites to *Caldwell*, *supra*, 234 Va. 639,
364 S.E.2d 1, where the court decided that a mechanical
breakdown exclusion did not bar coverage for a damaged drill
because the damage, in the court's view, had an external cause,

10

the rock strata through which the drill had been moving when it
was damaged. Similarly here, Plaintiff argues, these external
causes would not come within the scope of the mechanical
breakdown coverage and would not be examples of that coverage.

We are not persuaded by Plaintiff's reasoning. As
noted above, we disagreed with Plaintiff's point that mechanical
breakdown categorically requires an internal cause and rejected
its reliance on *Caldwell* to make that point, deciding that
*Caldwell* was defining mechanical breakdown only for the purpose
of the coverage at issue in that case, coverage for losses
caused by "any external cause." Here, we are trying to determine
if the mechanical breakdown endorsement provides coverage for
risks other than corrosion or defect, and the first and third
risks defendant insurer has described provide evidentiary
support for defeating Plaintiff's claim of illusory coverage. As
noted, we did decide  that Defendant would have to show coverage
for only one risk to establish that mechanical breakdown
coverage was not illusory. Defendant has provided us with two of
them.

We move on to Plaintiff's other objections. Plaintiff
contends that the second and fourth examples are invalid because
they are incomplete in not specifying the cause of the
overheating in the bearing or the engine block. Without knowing
the cause, Plaintiff says, it cannot be determined if the
mechanical breakdown endorsement would provide coverage.

We disagree. It is sufficient that Defendant provides evidentiary support for payment in these circumstances. It is Plaintiff's burden to prove there is coverage under the policy, *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 580, 533 A.2d 1363, 1366 (1987)), which we believe puts the burden on Plaintiff to prove that coverage is illusory. This means that Defendant would not have the burden of excluding all possible causes that might indicate coverage under another policy provision; it is sufficient that it has submitted evidence showing that it has provided coverage in the circumstances described.

Based on the foregoing, we have no need to examine the hypothetical examples listed in Defendant's brief. We note the following, however. As it did above, Plaintiff objects that the hypotheticals are incomplete, failing to give a complete description of the circumstances, including potential causes, for the losses. Since Plaintiff has the burden of showing illusory coverage, we think the descriptions are adequate for Defendant's purposes. Plaintiff has also objected that examples three and four are based on a surge of electrical power and therefore an external cause, but we have already rejected the notion that mechanical breakdowns must always be internal.

Therefore, the exclusions for defect, either latent or manufactured, bar coverage here; Plaintiff's experts both traced

the cause of the leak to a defect in the pipe, and in our summary-judgment memorandum, we already rejected Plaintiff's argument that an exception for an explosion precludes application of the "Wear, tear, deterioration, animals" exclusion, the exclusion which bars coverage for latent defects. *See St. Mary's Area Water Auth.*, *supra*, ___ F. Supp. 2d at ___, 2006 WL 3087704, at *11, 2006 U.S. Dist. LEXIS 78757, at *29-30.

   B.   *Whether the Contamination Exclusion When Read Together with the Pollution Exclusion Is Not Ambiguous, Thereby Barring Coverage Under Either Exclusion or Both.*

   The policy has exclusions for contamination and pollution. *St. Mary's Area Water Auth.*, *supra*, ___ F. Supp. 2d at ___, 2006 WL 3087704, at 4, 2006 U.S. Dist. LEXIS 78757, at *10-12. In moving for summary judgment, Defendant invoked both exclusions. After we concluded that mechanical breakdown coverage was available, we decided that the contamination exclusion did not bar coverage because the efficient proximate cause of the loss was mechanical breakdown, not contamination. *St. Mary's Area Water Auth.*, *supra*, ___ F. Supp. 2d at ___, 2006 WL 3087704, at *16, 2006 U.S. Dist. LEXIS 78757, at *45. We also decided that the pollution exclusion did not bar coverage even though it had an anticoncurrent-cause clause (which we called a "concurrent-cause provision" in the memorandum). *Id.* at ___, 2006 WL 3087704, at *17, 2006 U.S. Dist. LEXIS 78757, at *49-50. An anticoncurrent-cause clause defeats the operation of the

13

efficient proximate cause rule. *See generally, Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272 (Utah 1993); *see also Preferred Mut. Ins. Co. v. Meggison*, 53 F. Supp. 2d 139, 142 (D. Mass. 1999).

We reasoned as follows. Both exclusions excluded losses caused by contamination, and the loss here qualified as contamination, but the contamination exclusion did not bar coverage because of the efficient proximate cause rule while the pollution exclusion did because of the anticoncurrent-cause clause. Since one clause allowed coverage while the other did not for the same loss, we found an ambiguity favoring the insured when both clauses were read together.  We stated:

> [T]here is ambiguity as to coverage here because the contamination exclusion, through its "ensuing loss" clause, permits coverage of losses caused by contamination as long as the proximate cause of the contamination was a covered risk, but the pollution exclusion would bar coverage of losses caused by pollution (which includes contamination) through its concurrent-cause provision which bars coverage for pollution even if the pollution was caused by the mechanical breakdown. *See Narricot Indus., Inc.* [*v. Fireman's Fund Ins. Co.*, 2002 WL 31247972, at *7 (E.D. Pa.)] (no coverage under a policy using a concurrent-cause provision when a covered peril causes an uncovered one, both causing damage to the property). This ambiguity must be resolved in favor of coverage for the Authority.  We therefore conclude that the pollution exclusion does not bar the coverage provided by the equipment breakdown endorsement.

*St. Mary's Area Water Auth.*, *supra*,  ____ F. Supp. 2d at ____, 2006 WL 3087704, at *17, 2006 U.S. Dist. LEXIS 78757, at *49-50.

14

Picking up on our tying of the contamination clause's ensuing-loss provision to the efficient proximate cause rule, Defendant argues on reconsideration that neither the ensuing-loss provision nor the anticoncurrent-cause clause are relevant to application of the exclusions, that both exclusions operate independently to bar coverage for contamination. Quoting *Myung Sung, Inc. v. Firstline Nat'l Ins. Co.*, 1996 U.S. Dist. LEXIS 1411, at *6 (E.D. Pa.), it further argues that an ensuing-loss provision "does not provide coverage for excluded losses; it provides coverage for certain secondary losses ultimately caused by excluded perils." In its reply brief, Defendant also cites cases holding that mere overlap in insurance provisions does not create ambiguity: *Edens v. United Benefit Life Ins. Co.*, 2001 U.S. Dist. LEXIS 13857, at *8 (N.D. Tex.); *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Co.*, 994 F.2d 105, 109 (2d Cir. 1993); and *Constitution State Ins. Co. v. Iso-Tex, Inc.*, 61 F.3d 405, 409 (5th Cir. 1995).

Since we have decided that mechanical breakdown coverage is not illusory, we see no need to discuss Defendant's argument in detail. However, if Plaintiff's ambiguity claim had been pertinent to resolving the coverage issue, it would have been our conclusion that our original decision was correct.

We do note, however, in reviewing Defendant's argument, that a statement in our October 27, 2006, memorandum about the ensuing-loss clause was incorrect. The error has no

bearing on Defendant's argument but should be corrected.[7] We stated that the ensuing-loss clause "allow[ed] recovery for losses brought about by an uncovered risk as long as that risk was in the sequence of events proximately caused by a covered risk," citing *North Coast Enterprises v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 851707, at *3 (W.D. Wash.), as support. *St. Mary's Area Water Auth.*, *supra*, ___ F. Supp. 2d at ___ n.9, 2006 WL 3087704, at *** n.9, 2006 U.S. Dist. LEXIS 78757, at *47 n.9. Actually, and as *North Coast Enterprises* correctly observed, it is the opposite; the ensuing-loss clause allows recovery for losses brought about by a *covered risk* as long as that risk was in the sequence of events proximately caused by an *uncovered risk.*

IV.   Conclusion.

Based on the foregoing, we will grant Defendant's motion for reconsideration. We will accordingly grant Defendant's motion for summary judgment and deny Plaintiff's.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: February 2, 2007

---

[7] From our memorandum, it appears to have relevance only because we tied it to the efficient proximate cause rule, but the ensuing-loss provision has no effect on the efficient proximate cause rule; it is the anticoncurrent-cause clause that operates on that rule by seeking to negate it, as noted above.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ST. MARYS AREA WATER AUTHORITY, :
       Plaintiff

                                :

       vs.                 :   CIVIL NO. 1:CV-04-1593

ST. PAUL FIRE & MARINE     :
INSURANCE COMPANY,
       Defendant        :


*O R D E R*

AND NOW, this 2nd day of February, 2007, it is ordered that:

     1.  Defendant's motion (doc. 97) for reconsideration is granted.

     2.  The order of October 27, 2006, (doc. 94) is vacated.

     3.  The motion (doc. 75) of defendant, St. Paul Fire & Marine Insurance Co., for summary judgment is granted, and the Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff.

     4.  The motion (doc. 55) of Plaintiff, St. Mary's Area Water Authority, for summary judgment is denied.

     5.  The Clerk of Court shall close this file.


               /s/William W. Caldwell
              William W. Caldwell
              United States District Judge