IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ST. MARYS AREA WATER AUTHORITY, :
          Plaintiff
                                :

          vs.                   :    CIVIL NO. 1:CV-04-1593

ST. PAUL FIRE & MARINE          :
INSURANCE COMPANY,
          Defendant             :


*M E M O R A N D U M*

I.    *Introduction.*

          Plaintiff, St. Mary's Area Water Authority, has filed
a motion under Fed. R. Civ. P. 59(e), styled as a motion for
reconsideration, to alter or amend our order of February 2,
2007. The February 2 order granted the motion of defendant, St.
Paul Fire & Marine Insurance Co., for reconsideration of our
order of October 27, 2006. The latter order had granted summary
judgment in favor of the Authority and imposed liability on the
defendant insurance company for property losses the Authority
sustained when chlorine gas escaped from a pipe at its water-
treatment facility. By its motion to alter or amend, the
Authority wants us to reverse the reversal so that Defendant is
once again obligated to provide coverage.


II.   *Standard of Review.*

          The February 2 order was final because it ended the
litigation in favor of the insurance company.  A motion for

reconsideration of a final order is used "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)(quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Thus, a "party seeking reconsideration [must] show[ ] at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.*

   "A motion for reconsideration may not be used as a means to argue new facts or issues that were not presented to the court in the context of the matter previously decided." *Worbetz v. Ward North America, Inc.*, 54 Fed. Appx. 526, 533 (3d Cir. 2002) (nonprecedential). A Rule 59(e) motion "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)(quoted case and internal quotation marks omitted); *County of McHenry v. Ins. Co. of West*, 438 F.3d 813, 819 (7th Cir. 2006)(Rule 59(e) cannot be used to advance arguments or theories that could have been raised before entry of judgment); *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)(same); *Waye v. First Citizen's Nat'l*

2

*Bank*, 846 F. Supp. 310, 314 (M.D. Pa. 1994)(same). The motion also cannot be used simply to reargue theories on which the court has already ruled. *Fox v. American Airlines, Inc.*, 295 F. Supp. 2d 56, 59 (D.D.C. 2003).

III.  *Background*.

We provide sufficient detail here to resolve the Rule 59(e) motion. A fuller background is set forth in our memorandum accompanying the October 27, 2006, summary-judgment order in favor of Plaintiff, *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 464 F. Supp. 2d 397 (M.D. Pa. 2006)(*St. Mary's I*), and the memorandum accompanying the February 2, 2007, reconsideration order in favor of Defendant, *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F. Supp. 2d 630 (M.D. Pa. 2007)(*St. Mary's II*).

The Authority suffered property damage when chlorine gas escaped from a pinhole leak in a pigtail pipe at its water-treatment facility. Plaintiff had an all-risk policy with St. Paul and filed this suit for breach of contract, alleging that St. Paul was obligated to pay for the loss under the policy's coverage for mechanical breakdown located in an endorsement added to the policy, the Equipment Breakdown Endorsement. St. Paul resisted payment by denying that the loss came within its mechanical-breakdown coverage. It also argued that, in any event, the following five exclusions precluded coverage:

contamination, pollution, latent defect (in the pigtail), defects or errors (in the manufacture of the pigtail), and corrosion.

One of Plaintiff's arguments was that coverage for mechanical breakdown would be illusory if the exclusions for corrosion and defects (as well as for wear and tear, another exclusion in the policy) applied, and in those circumstances Pennsylvania courts would require Defendant to provide coverage for mechanical breakdown regardless of the exclusions.

A.   St. Mary's I: *the Memorandum Dealing With the Cross-motions for Summary Judgment*.

On cross-motions for summary judgment on the issue of coverage alone, we accepted Plaintiff's illusory-coverage argument. We began by noting that in *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 460 n.3, 879 A.2d 166, 174 n.3 (2005), the Pennsylvania Supreme Court indicated it would accept such an argument. We then looked to *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875 (7th Cir. 1999)(Indiana law), for a precise standard for evaluating when coverage is illusory. We stated:

> An insurance provision is considered illusory if "a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." *Fidelity & Guaranty Ins. Underwriters, Inc. v. Everett I. Brown Co.*, 25 F.3d 484, 490 (7th Cir. 1994). If a provision covers some risk reasonably anticipated by the parties, it is not illusory. *See City of Lawrence v.*

> *Western World Ins. Co.,* 626 N.E.2d 477, 480
> (Ind. App. 1993). If it does not, the
> illusory provision should be enforced in a
> way that protects the insured's reasonable
> expectations. *Id.*

*St. Mary's I*, *supra*, 464 F. Supp. 2d at 412 (quoting *Schwartz*,

*supra*, 174 F.3d at 879). Closing, and again citing *Schwartz*, we

stated, "If there is coverage for at least one risk, it is not

illusory." *Id.*

We next decided that coverage was illusory, agreeing

with Plaintiff that, given the exclusions for wear and tear,

defects and corrosion, there was "no reasonably expected set of

circumstances where the mechanical breakdown coverage would

apply if there was no corrosion or defect, as defect is defined

in the policy's exclusions." *Id.* at 412. In doing so, we

rejected specific examples Defendant argued would be covered as

mechanical breakdown not excluded as corrosion or defect.[1] *Id.*

Following *Schwartz*, we next considered whether

providing  coverage for mechanical breakdown protected the

Authority's reasonable expectations. We decided that it did,

reasoning as follows:

> An insured would have considered a pipe
> springing a leak a mechanical breakdown for
> which it had purchased coverage under the
> equipment breakdown endorsement. We have
> also already discussed above how the small
> hole in the pipe fits within the mechanical

---

[1]  The examples were: "a fire; an explosion that damages a
neighboring machine; an object being introduced into a
mechanical system, thereby causing it to fail; or the misuse of
a machine." *Id.*

> breakdown coverage, using the dictionary
> definitions to define the meaning of the
> phrase "mechanical breakdown or failure." As
> noted, the pipe is mechanical because it is
> part of the machinery at the Plant or at
> least connected to the machinery. A
> breakdown occurred because the pipe failed
> to function when it developed the hole that
> allowed chlorine gas to escape. A failure
> also occurred because the pipe gave way
> under the stress of the chlorine gas.

*Id.* at 413.

Having decided that mechanical-breakdown coverage was illusory in light of the exclusions for corrosion, defect, and wear and tear, we rejected Defendant's argument that other exclusions, for contamination and pollution, nonetheless barred coverage.

A threshold question was whether the determination of illusory coverage made these exclusions irrelevant. We decided that it did not, stating:

> It may be that these exclusions are not
> enforceable, given our conclusion that the
> mechanical breakdown coverage is illusory,
> *see Monticello Ins. Co.* [*v. Mike's Speedway
> Lounge, Inc.*, 949 F. Supp. 694, 703 (S.D.
> Ind. 1996)](interpreting Indiana law so that
> exclusions that do not render coverage
> illusory cannot defeat coverage the insured
> reasonably expected), but we think the
> illusory-coverage rule should apply only to
> those exclusions that make the coverage
> illusory; the insurer should otherwise be
> able to rely on other exclusions the parties
> agreed to.

*Id.* at 413 n.8. We decided that the contamination exclusion did not bar coverage because the efficient proximate cause of the loss was mechanical breakdown. *Id.* at 413-14. We also decided

6

that the pollution exclusion did not bar coverage, despite the presence of an anticoncurrent-cause clause in that exclusion, because of an ambiguity created when the pollution and contamination exclusions were considered together. *Id.* at 415.[2]

Because the amount of damages was in dispute, our summary-judgment order was "interlocutory," *id.* at 416, imposing liability on Defendant to provide coverage for mechanical breakdown but not for a specific amount of damages.

B.   St. Mary's II: *the Memorandum Dealing With Defendant's Motion for Reconsideration*.

In its motion for reconsideration, Defendant argued two points. First, relying on our ruling that one covered risk would defeat the argument of illusory coverage, Defendant submitted the affidavit of George Dickover, an adjuster for the Travelers Indemnity Company. The affidavit set forth four examples of coverage for mechanical breakdown which do not involve defect or corrosion and which Dickover affirmed represented claims St. Paul actually paid in Pennsylvania from 2002 to 2004 under its mechanical breakdown coverage. *St. Mary's II*, *supra*, 472 F. Supp. 2d at 633.[3] We decided that at least the

---

[2]   As part of our resolution of the summary-judgment motions, we also rejected Plaintiff's contention that an explosion caused the leak in the pigtail pipe. *Id.* at 409. "Explosion" is listed as an exception in the pollution and wear and tear exclusions.

[3]   In the affidavit, Dickover affirmed that he was acting on "personal knowledge" and his "review of certain business

first and third risks satisfied the criterion, a mechanical breakdown of a pump caused by sand ingestion due to a shallow well and mechanical breakdown of a steel shaft of a rotostrainer due to rocks and debris. *Id.* at 635. We described these as "provid[ing] evidentiary support for defeating Plaintiff's claim of illusory coverage." *Id.*[4] We therefore decided that the exclusions for defect, either latent or manufactured, barred coverage. *Id.* at 636.

In opposing reconsideration, Plaintiff made the following arguments. First, mechanical breakdown always involves only internal causes. Second, and again based on the premise that mechanical breakdown only involves internal causes, Plaintiff reasonably expected that the mechanical-breakdown coverage would cover losses caused by defects since defects are intrinsic to mechanical breakdowns. However, the exclusions defeated the coverage, thereby making it illusory. We rejected both arguments. On the second one, we stated that it:

---

records of St. Paul, prepared and maintained in the ordinary course of St. Paul's business." (Doc. 101-2, ¶ 3). Dickover further affirmed that the records he reviewed were "provided to him by Hartford Steam Boiler ("HSB") in which HSB issued reinsurance proceeds to St. Paul for losses recoverable by St. Paul from HSB for claims that St. Paul paid to its insureds under an Equipment Breakdown Endorsement." (*Id.*, ¶ 4).

[4] The second risk was mechanical breakdown of a pump caused by an overheated bearing that caused a pump to seize and the fourth was mechanical breakdown of a diesel engine block caused by overheating. *Id.* at 633. Defendant's brief also mentioned eight hypothetical risks.

> lacks merit because the insured's reasonable
> expectations are a separate issue from
> illusory coverage. The latter issue
> basically deals with whether exclusions take
> away everything that an insuring provision
> gives. Additionally, on the issue of
> reasonable expectations itself, while
> Pennsylvania does focus on the reasonable
> expectations of the insured, "an insured may
> not complain that [its] reasonable
> expectations were frustrated by policy
> limitations which are clear and
> unambiguous." *Donegal Mut. Ins. Co. v.*
> *Baumhammers*, 893 A.2d 797, 819 (Pa. Super.
> 2006)(en banc), *appeal granted*, 908 A.2d 265
> (Pa. Aug. 29, 2006). Thus, we have to take
> into account the exclusions when we consider
> what the insured might have reasonably
> expected.

472 F. Supp. 2d at 634-35.

Further, because we decided that Plaintiff had the burden of proving coverage was illusory, we rejected Plaintiff's argument that the second and fourth examples were deficient for not including the causes of the overheating in the bearing and in the engine block. *Id.* at 635. We also adhered to our original conclusion, against Defendant's challenge on reconsideration, that the pollution exclusion did not bar coverage because of an ambiguity created when the pollution and contamination exclusions were considered together.

Since we now concluded that mechanical-breakdown coverage was not illusory, we entered final judgment for the defendant insurer.

IV.   *Discussion*.

Plaintiff makes the following arguments in its Rule 59(e) motion. On the Dickover affidavit, it argues as follows. First, the court improperly used the affidavit to interpret the mechanical-breakdown coverage and related exclusions. The Authority asserts that if the court found the relevant provisions to be clear, then the affidavit was extrinsic evidence that should not have been used as an interpretive aid. Alternatively, if the court found the provisions ambiguous, then, regardless of what Dickover said, the court should have accepted the Authority's interpretation of the mechanical breakdown coverage, following the rule that ambiguous insurance provisions should be construed in favor of the insured. That interpretation precluded external causes for a breakdown.

Second, the court erroneously accepted this "self-serving extrinsic evidence presented by St. Paul while preventing the Authority from presenting its own extrinsic evidence." (Doc. 110, Br. in Supp. of Recon. p. 9). Third, the Dickover affidavit is inadmissible in support of a summary-judgment motion because it is not based on personal knowledge; Dickover affirms that he merely reviewed records produced by a third party. Fourth, the affidavit is not material to the illusory-coverage issue because, as argued below, the conflict did not arise from the Equipment Breakdown Endorsement alone but

from the interplay between the Endorsement and the policy.[5]
Fifth, the Equipment Breakdown Endorsement would have been
attached to other types of policies, and payment under those
policies would be irrelevant to whether there would be coverage
in the instant action. Sixth, Defendant did not produce the
underlying insurance records, either in discovery or during the
summary-judgment proceedings, and Plaintiff was therefore
surprised and prejudiced by the court's reliance on the
affidavit. Seventh, by relying on the Dickover affidavit the
court improperly made credibility determinations and did so
without allowing Plaintiff an opportunity to challenge the
affidavit or present contrary evidence at trial.

On the illusory-coverage analysis, Plaintiff argues as
follows. First, the court erred by placing the burden of showing
that coverage was illusory on the insured. Second, the court
erred in stating that illusory coverage is separate from the
reasonable expectations of the insured.

Third, the court's illusory-coverage analysis was
incorrect; "[t]he proper analysis is to first determine whether
there is a conflict between the language of the Equipment
Breakdown Endorsement and the exclusions contained in the
original policy language." (*Id.*, p. 13). If so, the conflict has

---

[5]  As noted, the mechanical-breakdown coverage is located
in the Equipment Breakdown Endorsement.

to be resolved in the insured's favor if there is a reasonable expectation of coverage.

Plaintiff argues that there is a conflict because the exclusions for "Defects or errors," and for "Wear, tear, deterioration, animals" purport to remove coverage for corrosion and for structural failure due to the inherent nature of the material, while the Endorsement extends coverage to "accidents" that include such events. According to Plaintiff, this conflict has to be resolved in its favor because it had a reasonable expectation of coverage in the circumstances here. Plaintiff cites in support of this argument two cases new to this litigation, *St. Paul Fire and Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981), and *Nationwide Mut. Ins. Co. v. Schmidt*, 307 F. Supp. 2d 674 (W.D. Pa. 2004), basically for the general proposition that an endorsement trumps a provision in the original policy when there is a conflict. Plaintiff also cites a third new case, *In re New Valley Corp.*, 89 F.3d 143 (3d Cir. 1996), dealing with illusory contracts rather than illusory insurance coverage.

Plaintiff tacks onto this argument another argument for coverage based on cases dealing with policy provisions providing coverage for "sudden and accidental" occurrences: *Washington Energy Co. v. Century Surety Co.*, 407 F. Supp. 2d 680 (W.D. Pa. 2005); *Lakeshore Marine, Inc. v. Hartford Accident and Indem. Co.*, 296 S.E.2d 418, 422 (Ga. App. 1982); and *Pioneer*

12

*Chlor Alkali Co., Inc. v. Royal Indem. Co.*, 879 S.W.2d 920, 938 (Tex. App. 1994). *Washington* has been cited for the first time; the latter two cases were cited before, but not for the point being advanced now.

The Rule 59(e) motion also argues that we erred in deciding that there was no explosion in the creation of the pinhole leak, and that therefore exceptions in the "Pollution" and "Wear, tear, deterioration, animals" exclusions for an explosion do not negate these exclusions. In its reply brief, Plaintiff argues a new claim, that an ambiguity created by the ensuing-loss clause in the "Defects or errors" exclusion allows coverage because mechanical breakdown is a covered risk that was in the sequence of events created by a defect within the scope of the "Defects or errors" exclusion but not within the scope of the "Wear, tear, deterioration, animals" exclusion.

  A. *Plaintiff's Arguments Against
    the Dickover Affidavit.*

We take the first and fourth arguments together since they are related. Plaintiff's first argument against the Dickover affidavit is that we used it to interpret the mechanical breakdown endorsement and the policy exclusions. This is incorrect. We interpreted those provisions using dictionary definitions. *St. Mary's I*, *supra*, 464 F. Supp. 2d at 406-07, 413-14, not the affidavit. We also found no ambiguity. Further, in line with our illusory-coverage analysis, while we did use

the affidavit to determine that there was at least two risks the endorsement covered that did not involve defect or corrosion, that was not a matter of policy interpretation, just a matter of fact concerning covered risks not involving defect or corrosion. It follows that we can also reject Plaintiff's fourth argument because the affidavit, contrary to Plaintiff's argument, was material to the illusory-coverage issue, for in our view of the necessary legal analysis, if there was coverage "for at least one risk," the insurance was not illusory. 464 F. Supp. 2d at 412. And the affidavit showed that there was coverage for risks not involving defect or corrosion.

Plaintiff's second argument has no merit. We did not prevent Plaintiff from presenting its own evidence in opposition to Dickover's affidavit. We would not have prevented Plaintiff from doing so, and in fact Plaintiff made no attempt to present such evidence, so we did not even have the opportunity to prevent it from presenting evidence (which we would not have done in any event, even if we had had the opportunity, which we did not).

We will dispose of the third and sixth arguments together as they both relate to summary-judgment procedure. Plaintiff's third argument is that the affidavit is not based on personal knowledge because Dickover merely reviewed records produced by a third party. Plaintiff's sixth argument is that it was unfairly surprised and prejudiced because the records

14

underlying Dickover's statements were never produced in discovery or in the record of the case.

Both of these arguments are rejected because, as Defendant argues, they could have been presented in opposition to Defendant's motion for reconsideration but were not. As noted, a Rule 59(e) motion "may not be used as a means to argue . . . new issues that were not presented to the court in the context of the matter previously decided." *Worbetz, supra,* 54 Fed. Appx. at 533; *see also Metropolitan St. Louis Sewer Dist., supra,* 440 F.3d at 933 (a Rule 59(e) motion cannot be used to raise arguments which could have been made before the entry of judgment); *County of McHenry, supra,* 438 F.3d at 819 (same); *Ross*, *supra*, 426 F.3d 745 at 763 (same); *Waye, supra,* 846 F. Supp. at 314 (same).

In addition, while Fed. R. Civ. P. 56(e) requires that the affidavit be made on personal knowledge, and assuming here that personal knowledge is lacking, Rule 56(e) defects are waived when no objection is made. *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 112 (2d Cir. 1987); *see also BGHA, LLC v. City of Universal City*, 340 F.3d 295, 299 (5th Cir. 2003)(hearsay objection to summary-judgment documents waived when not made before the trial court); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)(failure to object to Rule 56(e) defects before district court's ruling on summary judgment waives right to assert the objection); *Johnson v. Anhorn*, 416 F.

Supp. 2d 338, 360 n.15 (E.D. Pa. 2006)(court can consider hearsay in nonmoving party's affidavits when moving party on summary judgment makes no hearsay objection). And as to Plaintiff's claim of prejudice because the affidavit was produced for the first time on reconsideration, Plaintiff had notice of the affidavit when the reconsideration motion was filed, and could have made the same objection then. *See Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Homebuilder, Inc.*, 704 F.2d 822, 827-28 (5th Cir. 1983)(when the defendant successfully renewed its summary-judgment motion on the day of trial, the plaintiff could not claim lack of the ten days' notice required by Fed. R. Civ. P. 56(c) when the plaintiff did not raise that objection at the time the renewed motion was argued).

The fifth and seventh arguments are also rejected because they also could have been raised in opposition to Defendant's reconsideration motion. On the seventh argument, we add the following. Contrary to Plaintiff's assertion, it did not directly challenge Dickover's credibility in its opposition brief to the reconsideration motion. That challenge supposedly occurred when Plaintiff at pages 9-10 of the opposition brief (doc. 104) "discuss[ed] the inconsistent positions on 'mechanical breakdown,' which have been asserted by Travelers Indemnity Company and St. Paul," (Doc. 110, Pl.'s Br. in Supp. of Recon. Motion, p. 21). The inconsistent positions were argued

16

to have occurred in two cases, one involving Travelers, *Nat'l Union Fire Ins. Co. v. Travelers Indem. Co.*, 210 F. Supp. 2d 479 (S.D.N.Y. 2002), and the other involving St. Paul, *St. Paul Fire & Marine Ins. Co. v. Gen. Injectables & Vaccines, Inc.*, 2000 WL 270954 (W.D. Va.).

Contrary to Plaintiff's position, this was not framed as a challenge to Dickover's credibility, coming instead in a portion of the brief arguing the legal issue of contract interpretation, specifically Plaintiff's argument that mechanical breakdown did not include breakdown from external causes. Plaintiff's contention was that the cited cases indicated that even Travelers and St. Paul believed that mechanical breakdown included only external causes. In any event, it cannot be considered a challenge to Dickover's credibility on his affidavit because it did not challenge his representations that St. Paul had indeed paid under the mechanical-breakdown coverage in the instances listed.

In any event, we do not believe we made an improper determination of credibility. "It is by now axiomatic that "a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit to that effect.'" *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998)(quoted cases omitted). We note that Plaintiff did not present any countervailing evidence nor did it request an opportunity to do so after a period of discovery. *See*

17

Fed. R. Civ. P. 56(f). It also did not request an opportunity to
present evidence at trial, but since it failed to adequately
oppose Defendant's reconsideration motion, it had no automatic
right to a trial in any event.

We turn now to Plaintiff's arguments about illusory
coverage.

B.   *The Illusory-Coverage Analysis.*

Plaintiff's first argument against our illusory-
coverage analysis is that we improperly placed the burden of
establishing illusory coverage on Plaintiff. We disagree. We
were unable to locate any authority on this point, and
apparently Plaintiff was also unsuccessful since it provides no
cases to support its argument. In the absence of specific
authority, we relied on the general, well-established rule that
the insured has the duty of establishing coverage under the
policy, citing *Nationwide Mut. Ins. Co. v. Cosenza,* 258 F.3d
197, 206 (3d Cir. 2001)(applying Pennsylvania law).  This makes
sense since it is Plaintiff that is asserting that there is
coverage because the mechanical breakdown coverage is illusory;
it is not the defendant insurer asserting in the first instance
there is no coverage because the coverage is not illusory.

Plaintiff also argues that our illusory-coverage
analysis was erroneous. The Authority contends we should have
first determined whether there was a conflict between the
language of the Equipment Breakdown Endorsement (which contains

the mechanical-breakdown coverage) and the exclusions contained in the original policy language. If so, we should then have determined if the insured had a reasonable expectation of coverage. Plaintiff argues this standard was satisfied here because there was a conflict. The exclusions for "Defects or errors," and for "Wear, tear, deterioration, animals" purport to remove coverage for corrosion and for structural failure due to the inherent nature of the material, while the Endorsement conflicts by extending coverage to "accidents" that includes such events. According to Plaintiff, this conflict should have been resolved in its favor because it also had a reasonable expectation of coverage in the circumstances.

We reject this argument for two reasons. First, it was raised for the first time in the motion to alter or amend. Before then, Plaintiff did not challenge the standard we had borrowed from Indiana. Second, it fails on the merits. Plaintiff cites no relevant authority for this approach,[6] and we prefer our own analysis, which we think is more precise and at the time we adopted it thought (but did not express) that it had the benefit of guarding against the danger of the court's rewriting the insurance agreement for the parties. Cf. *Gen. Refractories*

---

[6] As noted above, the new cases Plaintiff cites in support of this argument, *St. Paul Fire and Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521 (3d Cir. 1981), *Nationwide Mut. Ins. Co. v. Schmidt*, 307 F. Supp. 2d 674 (W.D. Pa. 2004), and *In re New Valley Corp.*, 89 F.3d 143 (3d Cir. 1996), do not address illusory insurance coverage.

*Co. v. Ins. Co. of N. Am.*, 906 A.2d 610, 612-13 (Pa. Super.
2006)(court may not rewrite a contract when the meaning is
clear).

Hence, we stand by the test we adopted in our
memorandum dealing with the cross-motions for summary judgment,
which finds coverage not to be illusory if the challenged
provision covers at least one risk. We also stand by our
analysis applying that test here to conclude that coverage was
not illusory. We note that in its reply brief on its motion to
alter or amend, Plaintiff argues that the requirement of only
one risk is incorrect and that a showing that the "vast majority
of claims" are excluded suffices to establish illusory coverage.
(Doc. 112, Pl.'s Reply Br. at pp. 6-7). We reject that argument
because it is raised for the first time on the motion to alter
or amend, as well as for the first time in the reply brief. In
any event, we reject it on the merits as well because it makes
the determination of illusoriness arbitrary. It does not define
at what point the majority of claims becomes vast enough to
declare the coverage illusory. Further, Plaintiff's citation to
*12th Street Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158 (3d
Cir. 1996), to support this argument is misplaced because in
that case the Third Circuit was interpreting an exclusion, not
whether coverage was illusory.[7]

---

[7] Plaintiff's second argument is that we erred in our
reconsideration motion by stating that an insured's reasonable
expectations are separate from the determination of illusory

As part of its illusory coverage argument, Plaintiff tacked on another argument for coverage based on cases dealing with policy provisions providing coverage for "sudden and accidental" occurrences: *Washington Energy Co., supra,* 407 F. Supp. 2d 680; *Lakeshore Marine, Inc., supra,* 296 S.E.2d 418; and *Pioneer Chlor Alkali Co., supra,* 879 S.W.2d 920. We reject this argument because it has been presented for the first time in Plaintiff's motion to alter or amend. The argument also lacks merit because the cases deal with different contractual language.

The Rule 59(e) motion additionally argues that we erred in deciding that there was no explosion in the creation of the pinhole leak, and that therefore exceptions in the "Pollution" and "Wear, tear, deterioration, animals" exclusions for an explosion do not negate these exclusions. As noted above, Rule 59(e) cannot be used simply to relitigate matters the court has already decided. *Worbetz, supra*, 54 Fed. Appx. at 533; *Metropolitan St. Louis Sewer Dist., supra*, 440 F.3d at 933; *County of McHenry, supra,* 438 F.3d at 819; *Ross, supra,* 426 F.3d at 763; *Waye, supra,* 846 F. Supp. at 314.

Finally, in its reply brief, Plaintiff argues a new claim, that an ambiguity created by the ensuing-loss clause in

---

coverage, but we respond by saying that under our test there must first be a finding of illusory coverage before the insured's expectations are considered. In any event, Plaintiff's point, right or wrong, does not affect the result in this case.

the "Defects or errors" exclusion allows coverage because mechanical breakdown is a covered risk that was in the sequence of events created by a defect within the scope of the "Defects or errors" exclusion but not within the scope of the "Wear, tear, deterioration, animals" exclusion. We reject this argument because a Rule 59(e) motion cannot be used to present new arguments. *Worbetz, supra,* 54 Fed. Appx. at 533; *see also Metropolitan St. Louis Sewer Dist., supra,* 440 F.3d at 933; *County of McHenry, supra,* 438 F.3d at 819; *Ross*, *supra*, 426 F.3d 745 at 763); *Waye, supra,* 846 F. Supp. at 314.

We will issue an appropriate order.


<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge

Date: May 11, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ST. MARYS AREA WATER AUTHORITY, :
      Plaintiff
                          :

      vs.                :   CIVIL NO. 1:CV-04-1593

ST. PAUL FIRE & MARINE     :
INSURANCE COMPANY,
      Defendant          :


*O R D E R*


AND NOW, this 11th day of May, 2007, it is ordered that Plaintiff's motion (doc. 109) to alter or amend the order of February 2, 2007, is denied.


                              /s/William W. Caldwell
                             William W. Caldwell
                             United States District Judge